UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COURTNEY PARKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-01856-JMS-TAB |
| | ) |
| WENDY KNIGHT, | ) |
| RIDGEWAY, | ) |
| WILSON, | ) |
| | ) |
| Defendants. | ) |

**Entry Denying Motion for Appointment of Neutral Mediator, Granting Motion for Summary Judgment, and Directing Entry of Final Judgment**

Plaintiff Courtney Parker alleges that Defendants violated his constitutional rights when they refused to release him to use the restroom following a lockdown. Dkts. 12, 29. Defendants move for summary judgment, arguing that Mr. Parker failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. Dkt. 34. Mr. Parker has also filed a "Motion Requesting Possible Resolution and Nego[t]iation," asking the Court to appoint a neutral mediator to facilitate a settlement. Dkt. 46. For the reasons explained below, the motion requesting appointment of a mediator, dkt. [46], is **DENIED**. In addition, the motion for summary judgment, dkt. [34], is **GRANTED**, and the action is **DISMISSED WITHOUT PREJUDICE.**

## I.
## Motion to Appointment Neutral Mediator

Mr. Parker has filed a motion asking the Court to appoint a neutral mediator to facilitate a statement. Dkt. 46. That motion, dkt. [46], is **denied**. Given the pendency of Defendants' summary judgment motion, the Court finds that a settlement conference would not be beneficial.

## II.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in

opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.
### Factual Background

At all times relevant to the claims in this suit, Mr. Parker was incarcerated at Correctional Industrial Facility ("CIF"), a prison within the Indiana Department of Correction ("IDOC"). The IDOC has a standardized grievance process which was in place during the time Mr. Parker alleges his rights were violated. Dkt. 34-1 at 3; dkt. 34-2. Inmates are told about the process during their orientation at CIF. Dkt. 34-1 at 3.

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process is the IDOC policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies. Dkt. 34-2. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 4. Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. Dkt. 34-1 at 7. As to the second and third steps, if an inmate is dissatisfied with the response to his grievance, he has 5 business days to submit a first-level appeal to the Offender Grievance Specialist. Dkt. 34-2 at 14. The Warden/designee then has 10 business days to respond, although that deadline can be extended on notice to the inmate. *Id.* at 14–15. If the inmate is dissatisfied with the Warden/designee's response, or no response is received within the appointed time frame, he may move to the next step of the process—an appeal to the Department Offender Grievance Manager. *Id.* at 14. As to that step, the inmate has 5 business days to from the first-level appeal response to file a second-level appeal. *Id.*

3

Mr. Parker submitted a timely grievance about the events at issue in this lawsuit. Dkt. 34-4 at 2. The Grievance Specialist responded to the grievance on January 18, 2022. *Id.* at 3. Mr. Parker submitted a first-level appeal on January 22, 2022. *Id.* at 5. The Warden/designee's response is dated January 27, 2022. *Id.* at 6. Mr. Parker submitted a second-level appeal on March 5, 2022, *id.* at 6, but it was returned because it was filed more than 5 business days after the Warden/designee's response, *id.* at 7.

With his summary judgment response, Mr. Parker submitted an affidavit in which he states the following under penalty of perjury[1]: He received the response to his grievance on January 18, 2022, from then-Grievance Specialist Lauren Rasmussen. Dkt. 40 at 2. He "attempted to exhaust any and all legal facility remedies, but was told Grievance Specialist L. Rasmussen was going to be replaced." *Id.* Approximately a year later, on January 23, 2023, he was transferred to another prison, where he had no access to a law library for a year because he was housed in administrative segregation. *Id.*[2]

---

[1] The affidavit is not notarized, but notarization is not necessary because Mr. Parker included appropriate language verifying the contents under penalty of perjury. *See* 28 U.S.C. § 1746. Defendants ask the Court to disregard the affidavit because it is not signed. Dkt. 42 at 3. That request is denied. Although Mr. Parker did not "sign" the affidavit, it is hand-written, and he wrote his name on it. Given his *pro se* status, the Court will give him the benefit of the doubt and consider the affidavit for purposes of summary judgment.

[2] More than four months after he submitted his summary judgment response and Defendants filed their reply, Mr. Parker submitted a signed and notarized affidavit stating as follows: On January 15, 2022, he submitted a grievance. Dkt. 47 at 2. On January 18, he was told that Grievance Specialist Lauren Rasmussen was going to be replaced. *Id.* He submitted a first-level appeal on January 22, 2022. *Id.*[2] It was denied three days later. *Id.* The Grievance Specialists who made themselves available to him were Ms. Rasmussen, Robert Stafford, and one clerical assistant whose name he does not know. *Id.* Neither Mr. Stafford nor the clerical assistant "spoke to [him] the same way in regards to relevant grievances, nor did they have the same knowledge p[er]taining to said grievances." *Id.* He was also "moved to the R.W.I. dorm, then moved to an idle dorm where as it took weeks for personal mail to catch up to [him]." *Id.* This affidavit was filed long after the summary judgment response and surreply deadlines, *see* S.D. Ind. Local Rule 56-1, and, to the extent that it includes new facts not included in Mr. Parker's original response materials, the Court declines to consider it. Mr. Parker never asked for leave to submit his summary judgment response after the fact, nor does the affidavit include any information that would justify allowing such late supplementation. It appears that Mr. Parker was unable to access a notary at the time he filed his original summary judgment response materials, but he has not explained why he could not have timely

## IV. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Defendants must show that "an administrative remedy was available and that [Mr. Parker] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). That said, an inmate need only exhaust administrative remedies that are available, and an unavailable remedy need not be exhausted. *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022).

Defendants have met their burden of proving that Mr. Parker "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The undisputed evidence

---

communicated these additional facts to the Court. *See* Fed. R. Civ. P. 6(b)(1)(A) (explaining circumstances in which a deadline may be extended after it has expired). Regardless, even if the Court considered the second affidavit, it would make no difference to the outcome of this case. The fact that Mr. Stafford and the clerical assistant did not appear to be as knowledgeable as Ms. Rasmussen does not support an inference that the second-level appeal process was unavailable to him. His statement in his second affidavit that he was transferred and that "it took weeks for personal mail to catch up to him" also fails to create a material question of fact because he does not state when he was transferred or state when he received the first-level appeal response.

shows that Mr. Parker was aware of the grievance process and that he failed to file a timely second-level appeal. In his first affidavit, Mr. Parker states that he was told that Ms. Rasmussen was being replaced before he filed his first-level appeal. But that statement does not support a reasonable inference that his second-level appeal was actually timely. Neither does it support a reasonable inference he was prevented from timely filing a second-level appeal, especially given that he filed a first-level appeal after he was told that Ms. Rasmussen was being replaced.

Finally, the Court notes that Mr. Parker's response brief[3] states, "However the plaintiff (Courtney Parker) attempted to submit his level two (2) appeal on March 5, 2022 nearly one (1) month outside the deadline due to that is when he (Courtney Parker) received it, due to grievance specialist Ms. Laura Rasmussen not being available, allowing clerical assistants as well as Robert Stafford to respond to grievances, ultimately causing mail to not be received on time by the receiving party." Dkt. 41 at 2. Mr. Parker's brief was not made under penalty of perjury, and this factual statement does not appear in the verified statements that Mr. Parker submitted. Therefore, this statement is not properly supported, and the Court declines to consider it. *See* S.D. Ind. Local Rule 56-1(f) (facts as claimed and supported by admissible evidence by the movant are admitted as true unless the non-movant specifically controverts the facts with admissible evidence); *see also Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (district court properly disregarded unsworn statements at summary judgment).

In short, Mr. Parker has failed to designate admissible evidence creating a genuine issue of material fact as to whether he completed the available administrative process as required before

---

[3] Defendants ask the Court to disregard the response brief because it is not signed, thereby violating Federal Rule of Civil Procedure 11. Dkt. 42 at 4. Mr. Parker should have signed the brief, but, given Mr. Parker's *pro se* status and given that the brief is hand-written and clearly states at the beginning that Mr. Parker is the person submitting it, the Court overlooks his technical error in this one instance. Thus, the Court considers the arguments in the brief, although, as explained above, it does not consider improperly supported factual statements in the brief.

filing this lawsuit. *Reid*, 962 F.3d at 329. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against Defendants must be dismissed without prejudice. *Id*; *see also Ford v. Johnson,* 362 F.3d 395, 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## V. Conclusion

For the above reasons, Mr. Parker's motion asking the Court to appoint a neutral mediator, dkt. [46], is **DENIED**. In addition, Defendants' unopposed motion for summary judgment, dkt. [34], is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 2/4/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

COURTNEY PARKER
161825
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Alexander Thomas Myers
Office of Indiana Attorney General
alexander.myers@atg.in.gov

David Matthew Price
Office of the Indiana Attorney General
david.price@atg.in.gov